UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

HORACE GRIFFIN,
    Plaintiff,

vs.        02-1165

JAMES M. SCHOMIG, et al.,
    Defendants.

### ORDER

Before the court are the defendants' motion to dismiss, d/e 85, and the plaintiff's response thereto.

### Background

The majority of the plaintiff's allegations concern the failure of the staff at Pontiac Correctional Center to protect the plaintiff from attacks by other inmates in early 2002. The plaintiff claims he raised concerns to prison officials that he was in danger and that those officials failed to prevent contact between the plaintiff and the threatening inmates. The plaintiff has three strikes for previously filing suits found to be without merit, but the Magistrate Judge found that the plaintiff has sufficiently alleged he was in imminent danger at the time of filing and allowed this matter to proceed without prepayment of filing fees.

The plaintiff submitted his original complaint in this matter along with a motion to proceed in forma pauperis on May 6, 2002. The plaintiff alleged at that time that the defendants were failing to protect him from attack at Pontiac Correctional Center and that this life was in danger. The plaintiff filed an amended complaint on November 12, 2002, containing essentially the same allegations. On October 9, 2003, the court held a conference by video with the plaintiff to attempt to narrow and define his claims. The court then ordered the plaintiff to file another amended complaint clearly stating his claims and how he was in imminent danger on the day he filed his original complaint. The plaintiff filed another amended complaint on November 19, 2003. On August 26, 2004, the court found the plaintiff had sufficiently alleged imminent danger, but allowed the defendants to challenge this finding when they filed a responsive pleading. On September 8, 2004, the plaintiff moved to substitute defendants Melvin and Shaw for Jean and John does and was allowed to do so. On December 10, 2004, the plaintiff again filed an amended complaint. On March 1, 2005, the defendants filed a motion to dismiss, d/e 77.

In his response, the plaintiff discusses an alleged assault against him by several inmates that took place on February 15, 2002 while he was returning from the law library. He claims he received medical treatment after the alleged February 15, 2002 assault that included "some pain pills Tylenol, and eye medication." *See* plaintiff's response, d/e 88. The plaintiff also discusses

an alleged assault that took place on March 27, 2002. He claims he received medical attention after the alleged March 27, 2002 assault, which included Tylenol and bandages. *See* plaintiff's memorandum of law, d/e 87. The plaintiff also discusses alleged incidences that took place after the date, May 6, 2002, he submitted his complaint to this court. Anything that took place after May 6, 2002 is irrelevant to the issue before this court, so the court will not discuss those alleged incidences.

On March 15, 2005, the court conducted another status conference by video with the plaintiff and counsel for the defendants. At that conference, a representative of the Illinois Department of Corrections reviewed the plaintiff's file and found no record of any assault against the plaintiff prior to May 6, 2002. On March 15, 2005, the court then entered an order directing the defendants to prepare and submit a well-supported motion to dismiss based upon Griffin's master file record showing no incidents of assault prior to May 6, 2002, and further that he has three strikes and has to prepay the $150 filing fee.

On March 21, 2005, the defendants filed a motion to dismiss the plaintiff's complaint pursuant to 28 U.S.C. 1915(g), d/e 85. The defendants reminded the court that this court in its December 10, 2004 scheduling order had already found that the plaintiff has had three cases which qualify as strikes for purposes of 28 U.S.C. (g). The defendants assert that therefore, the plaintiff may only proceed without prepayment of filing fees if he establishes he is in imminent danger. The defendants assert that the plaintiff has not been attacked by the other inmates as established by his master file as reviewed at the March 15, 2005 status conference. The defendants assert that the plaintiff has not established he is in imminent danger and his case should be dismissed unless he pays the filing fee before proceeding.

In response, d/e 92, the plaintiff repeated his allegations made in his complaints and amended complaints and inferred that his medical record and a disciplinary report would corroborate that prison officials knew his life was in danger and the alleged attacks by other inmates. Therefore, on June 3, 2005, the court directed the plaintiff to provide a copy of the medical records that would document the inmate assault attack against him and a copy of the DR report which he referred to in his response to the defendants' motion to dismiss. The plaintiff was allowed twenty-one days to submit the documents and advised that failure to do so within the specified period, may result in a dismissal of the plaintiff's complaint pursuant to 28 U.S.C., Section 1915(g).

On June 21, 2005, the plaintiff filed a motion for extension of time to comply with the court's June 3, 2005 order. Then on August 5, 2005, this court considered motions by both the plaintiff and the defendants. In that order, the court considered, the plaintiff's motion for extension of time, d/e 102, to comply with the court's June 3, 2005 order directing the plaintiff to submit medical records that would document the alleged inmate assault attack against him and a copy of the DR report which he refers to in his response to the defendants' motion to dismiss. The court noted that the defendants had filed a motion for extension of time to complete discovery, d/e 104, up to and including August 1, 2005, wherein the defendants asserted that IDOC was attempting to locate the relevant portion of the plaintiff's medical records and stating

these records are apparently misplaced. Since it was past August 1, 2005, the court reasonably assumed the defendants had located the relevant documents and had forwarded a copy to the plaintiff. However, the court held that if not, in order to expedite the matter, the defendants were directed to provide a copy of the relevant medical records to the plaintiff, forthwith and to submit a copy of the medical records and a copy of the DR report to which the plaintiff refers to in his response to the defendants' motion to dismiss to this court by August 5, 2005 or to advise the court of the status of those misplaced records, by August 5, 2005.

On August 5, 2005, the defendants filed a notice of compliance, d/e 107, with the court's August 5, 2005 order. Then on August 16, 2005, the plaintiff filed motion for extension of time to file response/reply to the court's June 3, 2005 and August 5, 2005 orders. On August 17, 2005, the court entered the following order:

> Provided there are no meritorious objections, the plaintiff's motion for extension of time, d/e 109, is allowed to the following extent. To expedite this matter and to avoid any further delays, the warden of the plaintiff's place of incarceration is directed to hand deliver a copy of this order, the attached June 3, 2005, August 5, 2005 and August 8, 2005 orders to the plaintiff, forthwith, and to make the plaintiff sign for the copies. Further, the warden is directed to provide to the plaintiff access to his legal papers, specifically the medical records and disciplinary reports that were received by the plaintiff within the last few weeks, by Thursday, August 18, 2005. Further, the warden is directed to ensure that the plaintiff is provided with the necessary paper and writing equipment and copies of the documents he needs to submit to this court in order to comply with the court's August 5, 2005 order. The warden is directed to make the plaintiff sign a document that he has received his legal documents, appropriate paper, writing equipment and the necessary copies. Further, the warden of the plaintiff's place of incarceration is directed to file a notice of compliance with the court by Friday, August 26, 2005, as well as the documents of receipt and acknowledgment signed by the plaintiff. The court, in advance, thanks the warden for his cooperation, in this matter. The clerk of the court is directed to fax and mail a copy of this order to the warden of the plaintiff's place of incarceration, forthwith. The plaintiff is directed to comply with this order and he is also forewarned that his lawsuit is moving forward, with or without his compliance and cooperation with this order. The plaintiff must comply with the court's June 3, 2005, August 5, 2005 and August 8, 2005 orders and this order by August 26, 2005. The clerk of the court is directed to fax a copy of this order, as well as the June 3, 2005 and August 5, 2005 orders to the warden at the plaintiff's place of incarceration, forthwith and to place a copy in the mail.

> The defendants are directed to assist the warden where necessary
> to ensure compliance with this order. Further, if the defendants
> wish to file a reply to the plaintiff's response to the court's June 3,
> 2005, August 5, 2005, August 8, 2005 and this order, defendants
> are directed to file their reply by September 2, 2005.

Then on August 18, 2005, the plaintiff filed a brief to the court, d/e 110, advising the court that on August 8, 2005, he had received a copy of the disciplinary report and a letter from the defendants' counsel advising the plaintiff that they were attempting to locate the plaintiff's medical records. Further, the plaintiff advised the court that on August 3, 2005, he was placed in segregation and also that the defendants had not provided him with the medical reports or "any other requested information." He also advised the court that several "D.R." reports were in the process of being copied and he would forward those to the court. Then on August 23, 2005, the plaintiff filed another brief, d/e 111, in response to the court's August 17, 2005 order. In his brief, the plaintiff alleges that the warden did not comply, in part, with the court's August 17, 2005 order. The plaintiff claims he was not allowed access to his legal box. He also claims that on June 24, 2005, "upon the plaintiff receiving his personal property, and legal personal property the plaintiff was not allowed to see his personal property non legal personal property, upon the plaintiff looking through his legal personal property files the plaintiff notices several legal files missing from his legal box...." He does not specifically allege that documents are missing that pertain to the instant case.

On August 23, 2005, the court scheduled a status conference for Friday, August 26, 2005 at 10:00 AM by video conference. The court directed the warden at the plaintiff's place of incarceration to send the plaintiff's medical records and master file to the video conference.

On August 25, 2005, Terry L. Polk, the warden of Western Illinois Correctional Center (the plaintiff's place of incarceration) filed a notice of compliance with the court's August 17, 2005 order, d/e 114. The warden also filed the plaintiff's acknowledgment that he had received:

1. Copies of final summary report and disciplinary reports dated March 27, 2002, April 3, 2002 and May 6, 2002.
2. Copies of medical records, 58 pages.
3. Copies of U. S. District Court, Central District of Illinois Orders filed on June 3, 2005, August 5, 2005, August 8, 2005 and August 17, 2005.
4. Paper and Pencil.

On August 25, 2005, court rescheduled the status conference scheduled for Friday, August 26, 2005 at 10:30 AM to Wednesday, August 31, 2005 at 10:00 AM by video conference, before the Honorable Michael P. McCuskey. The plaintiff, Horace Griffin appeared pro se. Chris Higgerson, Assistant Attorney General, appeared for the defendants. Also appearing were Mark Stevenson Master File Coordinator and Carla Terpstra Medical Record Coordinator who brought the plaintiff's master file and medical file to the conference. The plaintiff was allowed to review his master file and medical records for documents that would

corroborate his allegations that he was in imminent danger on May 6, 2002, when he submitted his in forma pauperis and original complaint to this court. The status conference was continued for September 1, 2005 at 1:30 PM by video conference. Griffin, Higgerson, Stevenson and Terpstra appeared on September 1, 2005. The plaintiff's medical records and master file were made available to the plaintiff again for further review. After his review of those records and files, the plaintiff indicated that he had reviewed both his medical records and disciplinary file. The plaintiff further indicated he had received and reviewed all records pertaining to his complaint and had been provided sufficient time to do so. The court directed Illinois River Correctional Center (plaintiff's location during the video conference) to make three copies of the 52 pages of document to be given to plaintiff. The court directed the plaintiff to sign acknowledgment that he received the three copies of the 52 pages and to have copies mailed to the court and the defendants' counsel by September 7, 2005, as a requirement of completing the court's order.

Griffin filed documents, d/e 121 on September 2, 2005. The court reviewed the documents. A review of the documents submitted by Griffin shows that most of the documents are not relevant. The court will discuss only those documents that are relevant. The plaintiff submitted two pages of medical records showing he had an eye irritation and cold in February and March of 2002 and a headache on March 3, 2002. He also submitted a third page of medical records that shows the plaintiff received prescription medication on March 29, 2002 and August 4, 2002. He also submitted a disciplinary report for March 27, 2002 that shows he was disciplined for refusing to get out of bed to go to school. A second disciplinary report, dated April 7, 2002, shows the plaintiff was disciplined for possessing a television belonging to another inmate. A third report, dated May 6, 2002, shows the plaintiff was disciplined for lying on his bed and yelling loudly to another inmate.

On September 7, 2005, the court directed the defendants to file a reply to plaintiff's documents, d/e 121, filed on submitted on September 2, 2005 and the 52 pages discussed in the court's September 1, 2005 order that the plaintiff was to mail to the court by September 7, 2005. Further, the court ordered that the defendants must file a reply within seven days after the 52 pages are filed. On September 8, 2005, Griffin filed a brief notifying the court that he had given the 52 pages of records to an unidentified correctional officer at Western Illinois Correctional Center on September 1, 2005 to mail to the court, and asking if the court had received them. At that time, the court had not received the 52 pages.

On September 9, 2005, the court considered the plaintiff's notice and entered the following order:

> Before the Court is the plaintiff's status report, 122, wherein he alleges that on September 1, 2005, he gave the two copies of the 52 pages to an unnamed correctional officer to be mailed to this Court and defense counsel. As of today, the Court has not received the documents. The Court can only consider what is before this Court. The defendants are directed to file a reply to the documents the

5

>plaintiff filed on September 2, 2005, 121, by Other Deadline of
>9/15/2005. This case is moving forward based on the record that is
>before this court

On September 12, 2005, the defendants filed a reply, d/e 123, to the plaintiff's response to the court's order of August 17, 2005. The defendants acknowledge that on September 2, 2005, they had received 26 pages that had been filed on the plaintiff. In their reply, the defendants, among other things, point to medical records and disciplinary reports submitted by the plaintiff. The defendants note that the plaintiff submitted two pages of medical records showing he had an eye irritation and cold in February and March of 2002 and a headache on March 3, 2002. The plaintiff also submitted a third page of medical records shows the plaintiff received prescription medication in March 2002. The defendants argue that none of these entries demonstrates the plaintiff was in danger on May 6, 2002, the day he filed his complaint.

Further, the defendants note that the plaintiff attached a disciplinary report for March 27, 2002 show he was disciplined for refusing to get out of bed and go to school. A second disciplinary report, dated April 7, 2002, shows the plaintiff was disciplined for possessing a television belonging to another inmate. A third report, dated May 6, 2002, shows the plaintiff was disciplined for lying on his bed and yelling loudly to another inmate. The defendants argue that none of these reports document an event showing the plaintiff was in danger from other inmates or suffered any injury. The defendants argue that the plaintiff has failed to demonstrate he was in imminent danger on May 6, 2002 and he should be denied in forma pauperis and his complaint should be dismissed unless he can pay the filing fee.

On September 13, 2005, the plaintiff filed 51 more pages of documents, d/e 124. (The court will identify the plaintiff's 51 documents by the identifying marks on the docket. The first 25 pages are identified as Attachment 1, pages 1-25 and Attachment 2 contains pages 26-51, but are marked as pages 1-26.) Attachment 1 includes the following: The first two pages are medical records that mentions a blood pressure check on February 18, 2002 and notes the plaintiff's complaints about eye irritation on March 1, 2002, and headache, stuffy nose and cough on March 3, 2002. There is no indication that he complaint about an assault against him by other inmates on these medical records. The third page shows the plaintiff's assignment to school. Pages 4 and 5 appear to be case notes by a counselor, none of which describe any violent incidents. Page 6 is a double celling review form from Western Illinois Correctional Center dated June 23, 2005. Pages 7 through 18 appear to be an offender tracking system report. Page 19 -20 document the plaintiff's transfer from Pontiac Correctional Center to Menard Correctional Center on July 10, 2002. Page 21 is an incident report documenting the plaintiff's request for protective custody while he was incarcerated at Stateville Correctional Center on October 24, 2001. Pages 22 through 23 are a security reclassification report from Menard Correctional Center completed in July 2002. Page 24 is an internal classification form. That form shows that the plaintiff, who was by then incarcerated at Menard Correctional Center, was interviewed on July 9, 2002 and he identified an inmate by the last name of Jones as an enemy. Page 25 is another double ceiling review form from Western Illinois Correctional Center dated August 2, 2005. Moving on to Attachment 2, pages 1-2 are March 28, 2002 medical records that

document that shows the plaintiff was treated for asthma, hypertension and mild eye irritation. Pages 3 and 4 are copies of a February 6, 2002 grievance written by the plaintiff upon his arrival at Pontiac Correctional Center asking not to be housed near two inmates, Bert and T. Thomas, the plaintiff has listed as enemies. Page 5 is a document with a heading "Housing Unit." Pages 6 and 7 are lists of plaintiff's assignments within the Department of Corrections. Pages 8 and 9 are a grievance written by the plaintiff on February 16, 2002 alleging he was attacked by unknown inmates on February 15, 2002. Pages 10 and 11 are a February 7, 2002 grievance wherein the plaintiff complaints related to his property. Pages 12 - 15 are a March 1, 2002 letter to the Administrative Review Board wherein the plaintiff complains about two emergency grievances he filed while incarcerated at Pontiac Correction Center that concerned enemies at Pontiac. He mentions tht he had been attacked and beaten "once here in Pontiac cellhouse on 2 and 4 gallery flat...." He stated that he thought these inmates were from his past at Joliet and Stateville "is posting word to other gang members to have me hit." Page 16 is an April 26, 2002 memorandum from the Administrative Review Board responding to the plaintiff's grievance regarding his personal property. Pages 17 and 18 are a grievance written by the plaintiff on April 29, 2002, complaining that being removed from protective custody status and placed in segregation exposed the plaintiff to other inmates. He also discussed the fact that he saw several cells with no inmates within the cell for months on 7 gallery. It appears that the plaintiff was trying to get a cell without being subjected to have to share it with another inmate. Pages 19 -20 are a May 6, 2002 letter from the plaintiff to a warden wherein, the plaintiff advises the warden that the plaintiff's life is in danger, complained about receiving a disciplinary ticket and he complained that an inmate told him he was going to have someone from general population throw some human waste on the plaintiff. Pages 21 through 26 are an April 15, 2002 grievance written by the plaintiff complaining about the level of state pay for segregation inmates and complaining that the Administrative Review Board was unfair in a disciplinary hearing dated April 3, 2002 regarding a disciplinary ticket.

On September 14, 2005, the court ordered the defendants to reply to the above documents by September 20, 2005. On September 20, 2005, the defendants filed a reply to the documents submitted by the plaintiff, d/e 126. The defendants argue that none of these entries demonstrates the plaintiff was in danger on May 6, 2002, the day he filed his complaint. The court has reviewed the exhibits submitted by the plaintiff on September 2, 2005 and September 13, 2005. 28 U.S.C. § 1915(g) states that "in no event shall a prisoner bring a civil action . . . under this section . . . if the prisoner has . . . [three strikes] . . ., unless the prisoner is under imminent danger of serious physical injury." The court agrees with the defendants. Not one of the reports documents an event showing the plaintiff was in danger from other inmates when he submitted his original complaint on May 6, 2002 or that the plaintiff suffered any injury. Only the grievances written by the plaintiff himself even mention any danger from other inmates. Although he alleges that he received medical treatment after the assaults and his medical records would corroborate the assault, a review of the plaintiff's medical records does not indicate that the plaintiff received medical treatment for inmate assaults. Further, there is no indication that the plaintiff ever complained to medical staff about inmate assaults. There is nothing in his medical records to show that he sustained any injuries during the time he claimed he was assaulted by other inmates. The plaintiff has failed to demonstrate he was in imminent danger on

7

May 6, 2002 and therefore he cannot proceed in forma pauperis.  His complaint is dismissed for failure to pay the filing fee when he submitted his original complaint on May 6, 2002.

**It is therefore ordered:**

1. **As the plaintiff does not meet the exception found in 28 U.S.C. § 1915, the court revokes the plaintiff's in forma pauperis status and dismisses his entire lawsuit for failure to prepay the $150.00 filing fee on May 6, 2002 when he submitted his original complaint.**
2. **Pursuant to 28 U. S. C. § 1915, the defendants' motion to dismiss, d/e 85 is allowed.**
3. **Any remaining matters are rendered moot.**
4. **The clerk of the court is directed to terminate this entire lawsuit, forthwith.**

**Enter this 26th  day of September 2005.**


s\Harold A. Baker
_____
**HAROLD A. BAKER**
**UNITED STATES DISTRICT COURT**